# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

          v.

AURORA LOPEZ-AVILA,
                    *Defendant-Appellant.*

No. 11-10013

D.C. No.
4:10-cr-00035-
CKJ-JCG-1

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
November 14, 2011—San Francisco, California

Filed January 12, 2012
Amended February 14, 2012

Before: John T. Noonan and Carlos T. Bea, Circuit Judges,
and Donald E. Walter, Senior District Judge.*

Opinion by Judge Bea

---

*The Honorable Donald E. Walter, Senior District Judge for the U.S.
District Court for Western Louisiana, sitting by designation.

## COUNSEL

Robert L. Miskell, Office of the United States Attorney, Tucson, Arizona for the plaintiff-appellee.

Mark F. Williman, Tucson, Arizona, for the defendant-appellant.

## ORDER

The opinion in this case was filed on January 12, 2012 and was published at Slip Op. 259. The government has filed a motion requesting that we amend the opinion to remove the name of Assistant U.S. Attorney Jerry Albert from the Federal Reporter. The government's motion is DENIED.

However, the opinion is hereby amended as follows.

1.    At Slip Op. 274, after the paragraph ending *Berger v. United States*, 295 U.S. 78, 88 (1935), insert the following, beginning with a new paragraph:

<The mistake in judgment does not lie with AUSA Albert alone. We are also troubled by the government's continuing failure to acknowledge and take responsibility for Albert's error.

The Department of Justice has an obligation to its lawyers and to the public to prevent prosecutorial misconduct. Prosecutors, as servants of the law, are subject to constraints and responsibilities that do not apply to other lawyers; they must serve truth and justice first. *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993). Their job is not just to win, but to win fairly, staying within the rules. *Berger*, 295 U.S. at 88. That did not happen here, and the district court swiftly and correctly declared a mistrial when Albert's misquotation was revealed.

When a prosecutor steps over the boundaries of proper conduct and into unethical territory, the government has a duty to own up to it and to give assurances that it will not happen again. Yet, we cannot find a single hint of appreciation of the seriousness of the misconduct within the pages of the government's brief on appeal. Instead, the government attempts to shift blame by stating that "the prosecutor gave the defense counsel an opportunity to stop the offending question before

the prosecutor asked it," but "defense counsel did not realize, or even inquire about, how the question from the change of plea transcript had been redacted." Gov't Br. 26-27. Of course, as we have explained, Albert told the district court what he intended to *say*. Albert did not tell the court or opposing counsel that what he intended to say was not a full nor fair recitation of the magistrate's question to Lopez-Avila.

Finally, upon initial release of this opinion, the government filed a motion requesting that we remove Albert's name and replace it with references to "the prosecutor." The motion contended that naming Albert publicly is inappropriate given that we do not yet know the outcome of any potential investigations or disciplinary proceedings. We declined to adopt the government's suggestion and denied its motion. We have noticed that the U.S. Attorney's Office in Arizona regularly makes public the names of prosecutors who do good work and win important victories. *E.g.*, Press Release, U.S. Attorney's Office for the District of Arizona, "Northern Arizona Man Sentenced to Federal Prison for Arson," (January 31, 2012) ("The prosecution was handled by Christina J. Reid-Moore, Assistant U.S. Attorney, District of Arizona, Phoenix"), *available at* http://www.justice.gov/usao/az/press_releases/2012/ PR_01312012_Nez.html. If federal prosecutors receive public credit for their good works—as they should—they should not be able to hide behind the shield of anonymity when they make serious mistakes.>

2. At Slip Op. 274-75, replace the entire paragraph beginning with the sentence <We recognize that this court is not the proper venue for direct discipline of Albert, so we will not state here that the blow struck by Albert necessarily was one so foul as to require some form of sanction.> with <We recognize that this court is not the proper venue for direct discipline of Albert, so we will not state here that the blow struck by him necessarily was one so foul as to require some form of official sanction. We were not in district court to see what occurred; Albert has not appeared before us to explain him-

self; and this appeal is not directly about his misconduct, but rather about the question whether the Double Jeopardy Clause bars a new prosecution. However, we do not need a record greater or different than we have here to determine that Albert should not have misrepresented the transcript's question. Accordingly, we are in a position to do three things to ensure that this matter is handled properly following this disposition: we remand the case to allow the district court to consider dismissal with prejudice of the indictment as an exercise of its supervisory powers and to prevent other misconduct in the future; we instruct the district court to consider disciplinary options also pursuant to its supervisory powers; and we note that the Office of Professional Responsibility within the Department of Justice has the responsibility of investigating allegations of misconduct by federal prosecutors. Whether the circumstances attendant to Albert's misrepresentation attenuate or aggravate the misconduct is a matter as to which the trial judge or officials in the Office of Professional Responsibility are in a better position to determine.>

3.   At Slip Op. 275, replace: <*United States v. Kojayan*, 8 F.3d 1315, 1324 (9th Cir. 1993)> with <*Kojayan*, 8 F.3d at 1324>.

4.   At Slip Op. 267, replace: <But, of course, the prosecutor had *not* read the question magistrate's question "exactly the way it was."> with <But, of course, the prosecutor had *not* read the magistrate's question "exactly the way it was.">

The time for filing a petition for rehearing or rehearing en banc has expired, and neither party filed a petition. No subsequent petitions for rehearing or rehearing en banc shall be filed. The mandate shall issue in due course.

SO ORDERED.

## OPINION

BEA, Circuit Judge:

On the second day of trial in this drug trafficking prosecution, during the cross-examination of Defendant-Appellant Aurora Lopez-Avila, the prosecutor read back supposed testimony of Lopez-Avila from her earlier change of plea hearing. What he read back seemed to contradict Lopez-Avila's earlier statements on direct examination. Using this supposed prior testimony, the prosecutor—Assistant U.S. Attorney (AUSA) Jerry R. Albert, of the U.S. Attorney's Office for the District of Arizona—accused Lopez-Avila of having lied to the federal magistrate presiding at an earlier hearing.

But the prosecutor's quotation was only part of what he represented was a question asked the defendant under oath by the magistrate judge. It was a half-truth. Without telling the court or defense counsel, the prosecutor presented to court and counsel an altered version of the prior hearing's question and answer, and the altered version of such dialogue made it appear as though Lopez-Avila had contradicted herself on a material point, when she plainly had not. The district court naturally assumed the prosecutor had read the question and answer whole, and allowed the questioning to proceed. When the prosecutor's misrepresentation was discovered by defense counsel, he moved for a mistrial, which the court swiftly granted. The defense then moved to dismiss the indictment with prejudice, on double jeopardy grounds, but the district court denied that motion. Lopez-Avila's appeal from the denial of that motion is the legal issue before us.

We affirm the district court's denial of the motion to dismiss the indictment on double jeopardy grounds. In addition, we take several steps to ensure that AUSA Jerry Albert's actions are properly investigated, and that he is disciplined if the relevant authorities deem it proper. In so doing, we bear in mind that AUSA Albert's conduct is not directly before us,

and we express no judgment as to what sanctions, if any, are proper.

## I.

Defendant Aurora Lopez-Avila attempted to enter the United States from Mexico at the Nogales Port of Entry in Arizona. Upon a tip from an informant, customs officials searched her car and found 9.7 kilograms of cocaine behind the back seat cushion. Lopez-Avila was charged by indictment with possession with intent to distribute over 5 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(ii)(II).

Lopez-Avila initially pleaded guilty. At the guilty plea hearing, Lopez-Avila was asked a standard set of questions by a magistrate judge, including questions put to ascertain whether Lopez-Avila was knowingly and voluntarily entering a plea of guilty to the charges against her. The questioning included the following colloquy:

> COURT: In the last 48 hours have you had any drugs, prescription medication, or alcoholic beverage?
>
> DEFENDANT: No.
>
> COURT: Have you ever been treated for a mental condition?
>
> DEFENDANT: No.
>
> COURT: Ms. Lopez, has anyone threatened you or forced you to plead guilty?
>
> DEFENDANT: No.
>
> COURT: Has anyone made any promises to you as to what would happen in your case?

DEFENDANT: No.[1]

One month later, during a presentence interview, Lopez-Avila stated that she had been " 'forced' to commit this offense, or she would face dire consequences." Lopez-Avila had not earlier mentioned to defense counsel that she had been threatened to transport the contraband. Her counsel forthwith moved to withdraw the guilty plea in light of this new information. Following a hearing, the court granted the motion to withdraw the guilty plea.

The case proceeded to trial. Lopez-Avila conceded that she had been transporting contraband and therefore, as the district court later stated, "the whole issue in [the] case [was] whether [Lopez-Avila] was under duress, or threatened, or forced to commit this crime."[2] The government's case-in-chief took approximately one-and-a-half days. During that time, according to the district court, there were "no big surprises" during the testimony of the government's three witnesses. Rather, "the government . . . was moving forward as it had expected as the evidence was being presented."

---

[1]As is clear from this exchange, the only relevance of questions as to whether Lopez-Avila had been "threatened" was as to the voluntariness of the upcoming guilty plea. The proper place to raise her claim that she was "threatened" to commit the drug trafficking crime was as a defense to her guilt. *See, e.g.*, *United States v. Navarro*, 608 F.3d 529, 532 (9th Cir. 2010) (quoting model jury instructions regarding the duress defense). She later did just that. Lopez-Avila could also have made a duress argument to mitigate her sentence. *See* U.S.S.G. § 5K2.12 (allowing for downward departure where defendant "committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense"). But *not* at the change of plea hearing.

[2]Lopez-Avila contends that she thought that she was transporting pills called "Hoodia," a weight loss drug. However, Lopez-Avila conceded that she knew she was transporting some banned substance, and "[a] defendant charged with importing or possessing a drug is not required to know the type and amount of drug" in her possession to be found guilty of possessing contraband. *United States v. Carranza*, 289 F.3d 634, 644 (9th Cir. 2002).

On the afternoon of the second day of trial, Lopez-Avila took the stand in her own defense. She testified she had been coerced to transport the drugs found in her car. During cross-examination, the prosecutor—Jerry Albert of the U.S. Attorney's office in Tucson—attempted to impeach Lopez-Avila's testimony regarding such coercion by asking questions regarding what Lopez-Avila had said during her initial guilty plea hearing. Defense counsel objected, and at sidebar defense counsel argued that there was "an agreement that this change of plea and her admitting guilt was not going to be a part of this record." The prosecutor stated that he wanted to use certain questions and answers from that hearing to impeach Lopez-Avila but that, pursuant to counsels' agreement, he would not "bring out [that] she pled guilty." In particular, the prosecutor requested that he be allowed to recite to Lopez-Avila the following question and answer from the initial guilty plea hearing:

> COURT: Ms. Lopez, has anybody threatened you?
>
> DEFENDANT: No.

The court overruled the objection and allowed the prosecution to proceed.

The prosecution then asked Lopez-Avila about that exchange:

> Q: Do you recall testifying under oath on February 24th, 2010, and being asked *this question* by the Court—by the Magistrate Judge:
>
>> Ms. Lopez, has anyone threatened you?
>
> And you gave—did you give the following answer:
>
>> No.

Did you tell that under oath to Magistrate Judge Guerin?

DEFENDANT: Yes.

Q: Was that a lie?

DEFENDANT: How is that? I don't understand.

Q: Well, are you—you've now admitted that you in fact told the judge that *you were not threatened in this case*. And I'm asking you was your testimony on February 24th, 2010, while you were under oath, was that a lie? Did you lie to the judge about not being threatened?

DEFENDANT: Yes.

(Emphasis added.)

Cross-examination proceeded for approximately forty more minutes, when the court took a brief recess. At the recess, defense counsel asked the prosecution for a copy of the transcript from the guilty plea hearing. Immediately upon reviewing the transcript, defense counsel noticed that the prosecutor had misquoted the magistrate judge's question to Lopez-Avila, without notifying the court or defense counsel of his alteration. At the guilty plea hearing, Lopez-Avila was asked the following question:

COURT: Ms. Lopez, has anyone threatened you *or forced you to plead guilty?*

DEFENDANT: No.

(Emphasis added.)

At trial, however, the prosecutor omitted the latter clause of the magistrate's question—"or forced you to plead guilty"—

when he purported to quote from the transcript of the prior proceeding. The prosecutor represented to court and counsel the exchange was:

> COURT: Ms. Lopez, has anybody threatened you?
>
> DEFENDANT: No.

The defense immediately moved for a mistrial. Defense counsel contended that the prosecutor had made it seem as though Lopez-Avila had been asked whether she had been threatened *to commit the offense*, when the magistrate judge in fact had asked Lopez-Avila a different question: whether she had been threatened *to plead guilty*. The prosecutor admitted that his misquoting of the transcript had been intentional but claimed that his reading was a fair one: the transcript "didn't say threaten you to plead guilty. So I wasn't going to mention force you to plead guilty. That's not—I read exactly the way it was. And it's—to me, that says anyone threatened you? Period." But, of course, the prosecutor had *not* read the magistrate's question "exactly the way it was." AUSA Albert omitted an important ellipsis between the words "threatened you" and the end of the magistrate's question, which ellipsis would reveal that words were missing. Here, that missing phrase made all the difference.

The court agreed that the defense had the better reading of the real question and answer: that Lopez-Avila was answering whether she been threatened or forced to plead guilty and not whether she had been threatened or forced to commit any other act. The court told the prosecutor that "it would have been helpful to bring this to the court's attention at sidebar in advance." After a brief recess to consider the matter, the court concluded that it could not cure the error by giving a jury instruction. The court then declared a mistrial.

Following the mistrial order, defense counsel moved to dismiss the case on double jeopardy grounds. At the hearing on

that motion, the court said that it was "very surprised the [prosecution] had attempted to present . . . that evidence in that way to this jury." However, the court denied the motion. It correctly stated that under *Oregon v. Kennedy*, 456 U.S. 667 (1982), the Double Jeopardy Clause bars retrial after a defendant requests a mistrial "only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial." *Kennedy*, 456 U.S. at 676. Considering what had occurred at trial up to that point, the court found no evidence "that this was a strategy decision on [the prosecution's] part to abort the trial." Instead, the government "was moving forward as it had expected as the evidence was being presented," and the prosecutor's presentation of the edited transcript "was a deliberate strategy . . . to attempt to convict the defendant, or present evidence that [the prosecution] felt was supporting guilt rather than presenting evidence in order to go to a mistrial."

Lopez-Avila took an interlocutory appeal challenging the district court's denial of her double jeopardy motion. The district court divested itself of jurisdiction over the case and allowed the appeal to proceed because of its conclusion that the claim presented by this interlocutory appeal is "colorable."

## II.

As a preliminary matter, this court has jurisdiction to hear this interlocutory appeal. Even though a denial of a motion to dismiss the indictment on double jeopardy grounds is not a "final decision" of a district court, "[d]enials of a motion to dismiss on double jeopardy grounds have long been considered immediately appealable under the collateral order doctrine so long as the double jeopardy claim is at least colorable." *United States v. Alvarez-Moreno*, 657 F.3d 896, 899 (9th Cir. 2011) (internal quotations and citations omitted). "A 'colorable' claim in this context is one for which there is 'some possible validity.' " *Id.* (quoting *Richardson v. United*

*States*, 468 U.S. 317, 326 n.6 (1984)). The district court held that Lopez-Avila's claim is colorable, and the government does not object to this court exercising jurisdiction. As explained below, although Lopez-Avila's claim fails, it is not a "frivolous" double jeopardy claim that this court could dismiss on jurisdictional grounds. *See Alvarez-Moreno*, 657 F.3d at 899.

### III.

When reviewing a denial of a motion to dismiss on double jeopardy grounds before trial, this court "review[s] de novo legal questions" but "review[s] factual findings, including those on which denial may be based, for clear error." *United States v. Ziskin*, 360 F.3d 934, 943 (9th Cir. 2003).

### IV.

Lopez-Avila makes two arguments for why double jeopardy should bar retrial in this case: (1) retrial is barred under *Oregon v. Kennedy*'s "goading" exception to the usual rule that double jeopardy does not bar retrial where a mistrial is granted with the defendant's consent, and (2) retrial is barred by the Arizona Supreme Court's interpretation of its state constitutional protection against double jeopardy, which interpretation is incorporated into federal proceedings in Arizona through 28 U.S.C. § 530B. Both contentions fail. The Double Jeopardy Clause provides no bar to Lopez-Avila's retrial.

### A.

**[1]** Because "[a] defendant's motion for a mistrial constitutes a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact," *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982) (internal quotations and citation omitted), the Double Jeopardy Clause usually does not bar retrial when a mistrial is declared with the consent of the defendant. Instead, "[o]nly where the

governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.* In adopting this standard, the Supreme Court expressly rejected the idea that double jeopardy would bar retrial when mere " 'bad faith conduct' or 'harassment' on the part of the judge or prosecutor" provoked the defense to ask for a mistrial. *Id.* at 674. In other words, in the language of veteran trial lawyers, the Double Jeopardy Clause bars retrial when a prosecutor's misconduct aims to "burn" the jury, but not when he merely aims to convict the defendant by methods foul.

In practice, the *Kennedy* standard is rarely met. That is because " '[i]t doesn't even matter that [the prosecutor] knows he is acting improperly, provided that his aim is to get a conviction. The only relevant intent is intent to terminate the trial, not intent to prevail at this trial by impermissible means.' " *United States v. Perlaza*, 439 F.3d 1149, 1173 (9th Cir. 2006) (quoting *United States v. Oseni*, 996 F.2d 186, 188 (7th Cir. 1993)). Lopez-Avila cites no published Ninth Circuit case since *Kennedy* that has held that retrial was barred after the defense consented to a mistrial motion. Nationwide, such cases are few and far between. *See, e.g.*, Sheldon Shapiro, *Double Jeopardy As Bar To Retrial After Grant Of Defendant's Motion For Mistrial*, 98 A.L.R.3d 997 (1980 & Supplements) (collecting cases from state and federal courts).

Lopez-Avila points to a single fact in the record that supposedly shows why the government may have been unhappy with the way the trial was proceeding and therefore attempted to sink its case: the fact that the border patrol agent who searched Lopez-Avila's car testified that there was no evidence that Lopez-Avila knew she was transporting cocaine. In particular, Agent Lozania testified that Lopez-Avila consistently maintained during questioning that she did not know the vehicle contained cocaine. But this fact would provide no reason for the prosecution to subvert its case, since it did not

affect any element needed for conviction. While Lopez-Avila said that she thought she was importing diet pills, she admitted that she knew such importation would be unlawful. That admission is enough to satisfy the statute's intent requirement under Ninth Circuit law. *See United States v. Carranza*, 289 F.3d 634, 644 (9th Cir. 2002).[3] Notably, Agent Lozania gave no testimony to bolster Lopez-Avila's claim that she had been coerced to carry the diet pills she admitted she was smuggling.

[2] As the district court found, all of the evidence led to the conclusion that the prosecutor's conduct was "deliberate," a "trial strategy" used to "attempt to convict the defendant." These are all findings of fact, made by the trial judge, who heard the evidence and observed the conduct of AUSA Albert. We review such findings for clear error. *United States v. Ziskin*, 360 F.3d 934, 943 (9th Cir. 2003). Of course, there was abundant evidence to support the district court's quoted findings. There was no error, much less clear error. Retrial is not barred by the Double Jeopardy Clause based on *Oregon v. Kennedy*'s "goading" exception.

### B.

[3] Lopez-Avila's second argument is that the Double Jeopardy Clause bars retrial in light of 28 U.S.C. § 530B, which governs ethical standards for government lawyers. 28 U.S.C. § 530B states that "an attorney for the Government shall be subject to State laws and rules, and local Federal court rules, *governing attorneys* in each State where such attorney engages in that attorney's duties, to the same extent and in the *same manner as other attorneys* in that State."

---

[3]Even if it is possible that some juror might use Lopez-Avila's lack of knowledge of the identity of the contraband to acquit, doing so would be contrary to our settled law, as noted above in footnote 2. The court cannot presume that a prosecutor would want to sabotage his case because he thought that a jury would fail to follow the law.

(Emphasis added). Lopez-Avila contends that this statute, which by its terms applies to "rules . . . governing attorneys," also means that the Arizona Supreme Court's interpretation of the Arizona Constitution's Double Jeopardy Clause applies in federal criminal proceedings in Arizona. Therefore, Lopez-Avila contends, an Arizona state Double Jeopardy case, *Pool v. Superior Court*, 677 P.2d 261 (Ariz. 1984), applies in this proceeding. As a final step, Lopez-Avila contends that under *Pool*, which is more defendant-friendly than *Kennedy*, her retrial should be barred.

To begin with, Lopez-Avila admits that she did not raise this argument below, so we can review only for plain error. *United States v. Olano*, 507 U.S. 725, 731 (1993). But Lopez-Avila's contention on § 530B fails under any standard of review.

**[4]** First, her argument is contradicted by the plain text of § 530B, which states that "*an attorney* for the Government shall be subject to State laws and rules . . . *governing attorneys*." 28 U.S.C. § 530B(a) (emphasis added). The Supreme Court has said that the Constitution's protection against double jeopardy in the Fifth Amendment "affords a *criminal defendant* a valued right to have his trial completed by a particular tribunal." *Kennedy*, 456 U.S. at 671 (emphasis added) (internal quotations omitted). Even if one of the purposes of the Double Jeopardy Clause is to protect against prosecutorial overreaching, the right itself is plainly a right held by a criminal defendant, not one that directly governs the conduct of prosecutors. There is simply no language in § 530B that would allow this court to apply Arizona's substantive interpretation of the double jeopardy clause in its own state constitution to this case, on the basis of a federal statutory provision governing ethical standards of conduct for government lawyers.

Second, regulations promulgated by the Department of Justice pursuant to § 530B(b) confirm that § 530B(a) "should not

be construed in any way to alter federal substantive, procedural, or evidentiary law." 28 C.F.R. § 77.1(b). Lopez-Avila gives no reason why this regulation is invalid or does not apply to this case. Its application makes clear that the content of the federal Double Jeopardy Clause is not to be transmuted into Arizona's, by reference to § 530B.

**[5]** Finally, although no decision in our circuit has responded to this precise argument, other courts that have examined whether § 530B changes other substantive legal rules have unanimously rejected the claim. *See, e.g.*, *U.S. v. Lowery*, 166 F.3d 1119 (11th Cir. 1999) (violation of Florida state rules of professional conduct does not require exclusion of otherwise admissible evidence in federal court even if evidence is obtained in violation of state professional conduct rules); *United States v. Syling*, 553 F. Supp. 2d 1187, 1192 (D. Haw. 2008) (Section 530B does not compel the government to provide exculpatory evidence to a grand jury where defendant contended Hawaii state ethical rules required government lawyer to do so). We agree with the reasoning of those courts. Section 530B requires federal attorneys to behave within a state's rules for attorney conduct. It does not amend the Fifth Amendment to the U.S. Constitution to include a state's notions of what constitutes double jeopardy as used in that state's constitution.

**[6]** In sum, we conclude that the Double Jeopardy Clause does not bar a retrial of Lopez-Avila under these circumstances. We therefore affirm the district court's denial of her motion to dismiss based on the Double Jeopardy Clause.

### V.

We must note, however, that our conclusion on the double jeopardy question may not be the end of this matter. AUSA Jerry Albert represented to the trial court an altered version of the dialogue between the court and a witness at a hearing which had taken place in that same federal court. He pre-

sented a falsified version of an exchange as the true recitation of the transcript, until caught out by defense counsel. He did so to make it seem to the jury as if Lopez-Avila had lied under oath about being threatened *to commit the cocaine possession crime*, when she had plainly responded to a magistrate judge's question about whether she had been threatened *to enter a plea of guilty*. It is hard to see—and, from our vantage point as an appellate tribunal, we do *not* see—how a prosecutor could interpret a magistrate's question, "Has anyone threatened you or forced you to plead guilty?", asked at a run-of-the-mill guilty plea hearing, to mean "Has anyone threatened you *to commit this offense* or forced you to plead guilty?"

After the mistrial was granted, AUSA Albert maintained that his reading was plausible. Perhaps Albert truly thought this, or perhaps he thought that consistently maintaining this position would minimize the possibility of any potential sanctions against him. We have no way of knowing, as it is not our task to conduct a thorough investigation of Albert's conduct for disciplinary purposes. We do note that Albert's name does not appear on the prosecution's brief in our court, and he did not appear at oral argument before us. But whatever Albert's motivation, it is worth reminding him and all federal prosecutors of Justice Sutherland's famous statement that the dual obligation of a federal prosecutor in our justice system is to strike hard blows but to refrain from striking foul ones; to use legitimate means to attempt to secure a conviction without employing improper methods to do so. *Berger v. United States*, 295 U.S. 78, 88 (1935).

The mistake in judgment does not lie with AUSA Albert alone. We are also troubled by the government's continuing failure to acknowledge and take responsibility for Albert's error.

The Department of Justice has an obligation to its lawyers and to the public to prevent prosecutorial misconduct. Prose-

cutors, as servants of the law, are subject to constraints and responsibilities that do not apply to other lawyers; they must serve truth and justice first. *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993). Their job is not just to win, but to win fairly, staying within the rules. *Berger*, 295 U.S. at 88. That did not happen here, and the district court swiftly and correctly declared a mistrial when Albert's misquotation was revealed.

When a prosecutor steps over the boundaries of proper conduct and into unethical territory, the government has a duty to own up to it and to give assurances that it will not happen again. Yet, we cannot find a single hint of appreciation of the seriousness of the misconduct within the pages of the government's brief on appeal. Instead, the government attempts to shift blame by stating that "the prosecutor gave the defense counsel an opportunity to stop the offending question before the prosecutor asked it," but "defense counsel did not realize, or even inquire about, how the question from the change of plea transcript had been redacted." Gov't Br. 26-27. Of course, as we have explained, Albert told the district court what he intended to *say*. Albert did not tell the court or opposing counsel that what he intended to say was not a full nor fair recitation of the magistrate's question to Lopez-Avila.

Finally, upon initial release of this opinion, the government filed a motion requesting that we remove Albert's name and replace it with references to "the prosecutor." The motion contended that naming Albert publicly is inappropriate given that we do not yet know the outcome of any potential investigations or disciplinary proceedings. We declined to adopt the government's suggestion and denied its motion. We have noticed that the U.S. Attorney's Office in Arizona regularly makes public the names of prosecutors who do good work and win important victories. *E.g.*, Press Release, U.S. Attorney's Office for the District of Arizona, "Northern Arizona Man Sentenced to Federal Prison for Arson," (January 31, 2012) ("The prosecution was handled by Christina J. Reid-Moore,

Assistant U.S. Attorney, District of Arizona, Phoenix"), *available at* http://www.justice.gov/usao/az/press_releases/2012/ PR_01312012_Nez.html. If federal prosecutors receive public credit for their good works—as they should—they should not be able to hide behind the shield of anonymity when they make serious mistakes.

We recognize that this court is not the proper venue for direct discipline of Albert, so we will not state here that the blow struck by him necessarily was one so foul as to require some form of official sanction. We were not in district court to see what occurred; Albert has not appeared before us to explain himself; and this appeal is not directly about his misconduct, but rather about the question whether the Double Jeopardy Clause bars a new prosecution. However, we do not need a record greater or different than we have here to determine that Albert should not have misrepresented the transcript's question. Accordingly, we are in a position to do three things to ensure that this matter is handled properly following this disposition: we remand the case to allow the district court to consider dismissal with prejudice of the indictment as an exercise of its supervisory powers and to prevent other misconduct in the future; we instruct the district court to consider disciplinary options also pursuant to its supervisory powers; and we note that the Office of Professional Responsibility within the Department of Justice has the responsibility of investigating allegations of misconduct by federal prosecutors. Whether the circumstances attendant to Albert's misrepresentation attenuate or aggravate the misconduct is a matter as to which the trial judge or officials in the Office of Professional Responsibility are in a better position to determine.

[7] First, we remand to the district court to consider two different courses of action that would deter future misconduct like this since "[q]uite as important as assuring a fair trial . . . is assuring that the circumstances that gave rise to the misconduct won't be repeated in other cases."[4] *Kojayan*, 8 F.3d at

---

[4]Lopez-Avila argued in her motion to dismiss in district court that the indictment should be dismissed with prejudice pursuant to the Double

1324. If a request by the defense is made, one option on remand may be for "the district court to determine whether to retry the defendant[ ] or dismiss the indictment with prejudice as a sanction for the government's misbehavior." *Id.* at 1325. The remedy of dismissal with prejudice, which is strong medicine for the entire prosecutorial group, is available pursuant to a district court's supervisory powers over the attorneys who practice before it. *Id.*; *see also United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008) (holding that the district court did not abuse its discretion in dismissing an indictment with prejudice where the prosecutor showed "reckless disregard for the prosecution's constitutional obligations").

**[8]** Second, the district court may want to discipline the prosecutor directly. If it thinks it appropriate, the district court has the power to issue an order to show cause why Albert should not be disciplined. *United States v. Hasting*, 461 U.S. 499, 506 n.5 (1983). We state here once again that we express no opinion on whether Albert in fact should be disciplined.

**[9]** Third and finally, we note that the district court is not the sole institution with the authority to investigate and discipline prosecutorial misconduct. Within the Department of Justice, the Office of Professional Responsibility (OPR) is required to "[r]eceive, review, investigate and refer for appropriate action allegations of misconduct involving Department

---

Jeopardy Clause, but she did not argue for a dismissal pursuant to the court's supervisory powers. Thus, that issue is not before us and we express no opinion whether this case *should* be dismissed with prejudice pursuant to the court's supervisory powers. The fact that we affirm the denial of Lopez-Avila's motion to dismiss on double jeopardy grounds does not preclude the district court from considering a motion to dismiss on other grounds if a motion is made. *See United States v. Simpson*, 927 F.2d 1088, 1089 (9th Cir. 1991) (considering an appeal from a dismissal with prejudice pursuant to the district court's supervisory powers after the Ninth Circuit had, in the same case, previously reversed a dismissal with prejudice under the Due Process Clause).

attorneys that relate to the exercise of their authority to . . . litigate." 28 C.F.R. § 0.39a(a)(1). If a complaint is filed, OPR would therefore be required to review the conduct of the Department attorney. Anyone may file a complaint with the Office by sending a letter to the address listed on OPR's website at http://www.justice.gov/opr/process.htm (last visited January 4, 2012).[5]

\* \* \*

The defense consented to a mistrial, and there is no evidence that the prosecution was attempting to "goad" the defense into making the mistrial request—rather, the evidence reveals that this is a case of a prosecutor crossing the line in an attempt to "win at all costs." Thus, the Double Jeopardy Clause does not bar Lopez-Avila's retrial. The district court's denial of that motion is therefore AFFIRMED. The case is REMANDED for further proceedings.

---

[5]The website also includes the specific information that any letter of complaint should include.