**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jerome JOZWIAK, et al., Defendants– Appellants.**

**Nos. 91–3677 to 91–3685.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1992.

Decided Jan. 22, 1992.

Certiorari Denied March 23, 1992.

See 112 S.Ct. 1512.

Vilija Bilaisis, Joel D. Bertocchi, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Criminal Div., Barry R. Elden, Asst. U.S. Atty., Office of U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for U.S.

Leo I. Fox, Ronald J. Clark (argued), Chicago, Ill., for Jerome Jozwiak.

Ronald J. Clark (argued), Charles J. Aron, Chicago, Ill., for Donna Hurns.

Martin S. Agran, Agran & Agran, Ronald J. Clark (argued), Chicago, Ill., for Christopher Epison.

Richard F. Walsh, Ronald J. Clark (argued), Chicago, Ill., for Eula Scott.

James A. McGurk, Bell & McGurk, Ronald J. Clark (argued), Chicago, Ill., for Schawana Lunford.

Ronald J. Clark, Chicago, Ill. (argued), for Deral Willis.

Gerald J. Collins, Ronald J. Clark (argued), Chicago, Ill., for Stanley Wright.

Michael G. Berland, Ronald J. Clark (argued), Chicago, Ill., for Harold Williams.

Ronald J. Clark (argued), Howard E. Towles, Towles & Associates, Chicago, Ill., for Tyrone Helse.

Before FLAUM, EASTERBROOK, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Nine of the twenty-six defendants in this case charging a conspiracy to distribute cocaine went to trial on November 4, 1991. A prosecutor—whose first trial this was—told the jury during his opening statement that five of the original defendants were cooperating with the government and would appear as witnesses and that four others had also pleaded guilty. The mention that some of the defendants had entered pleas of guilty led the defendants to seek a mistrial. A senior prosecutor from the United States Attorney's office confessed error and apologized. As everyone wanted a mistrial, the district judge sent the jury home. There was no point conducting a long trial with a built-in error.

All nine defendants then insisted that the double jeopardy clause bars further prosecution. The district court denied the motion, observing that the defendants had requested the mistrial. See *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). On the authority of *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the defendants have appealed, asking us to block a second trial.

The double jeopardy clause gives the defendant a right to "get a verdict if he wants one and keep it if he gets it". *United States ex rel. Young v. Lane*, 768 F.2d 834, 837 (7th Cir.1985). A right to obtain implies a right to relinquish. Defendants may choose whether to proceed with the first jury; if they elect not to, they have not been "deprived" of any entitlement. To honor a choice is not to dishonor the underlying rule. The alternative to honoring the defendant's choice is forcing the parties to verdict in the first trial, then reversing the conviction and holding another trial—something neither side wants.

*Dinitz* recognizes that a motion for a mistrial is not an invariable sign of the accused's choice to forego decision by the first tribunal. 424 U.S. at 611, 96 S.Ct. at 1081; see also *United States v. DiFrances-co*, 449 U.S. 117, 130, 101 S.Ct. 426, 433–34, 66 L.Ed.2d 328 (1980); *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion); *United States v. Tateo*, 377 U.S. 463, 468 n. 3, 84 S.Ct. 1587, 1590 n. 3, 12 L.Ed.2d 448 (1964). Perhaps things have been going well for the defense but the prosecutor does something exceedingly prejudicial, so much so that the balance suddenly (and improperly) shifts in the prosecutor's favor. Even though the defense then moves for a mistrial, termination of the trial is properly attributed to the prosecutor's conniving rather than to the accused's preference. In *Oregon v. Kennedy*, 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982), the Court held that, if "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial", a second trial is impermissible. So our defendants asked for a hearing at which they could probe the prosecutor's intent, including "the actual circumstances surrounding the making of the statements by [the prosecutor] and his being designated to give the opening statement in this trial." The district judge declined to hold a hearing. This decision provides the foundation for the defendants' arguments to us.

Doubtless every lawyer would like to have his adversary's counsel at his mercy. Put the prosecutor on the stand; ask him why he chose one strategy and rejected another; inquire what weakness in the evidence led to a given remark. Attractive to the defense, certainly; compelled by the Constitution, certainly not. To say that intent is an element of the constitutional rule is not to say that intent is to be proved by testimony and cross-examination. Judges may say that the constitutionality or meaning of legislation depends on "legislative intent" without implying that testimony and cross-examination of Senators is proper. Prosecutors who take race into account when exercising peremptory challenges violate the Constitution. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). It does not follow that the prosecutor must mount the witness stand whenever the defense contests a

strike. Instead the judge may evaluate the prosecutor's informal explanation in light of the circumstances. *Hernandez v. New York,* ── U.S. ──, 111 S.Ct. 1859, 1868–69, 114 L.Ed.2d 395 (1991); *United States v. Tucker,* 836 F.2d 334, 338–40 (7th Cir. 1988). So too a judge may evaluate the prosecutor's informal explanation for an action that leads to a mistrial. Here the prosecutor attributed the reference to guilty pleas to his inexperience, and the judge believed him.

Any search for steps intended to goad defendants into seeking mistrials encounters a problem. Because intent is a matter of characterization, you cannot even know what indicia to look for unless you know the direction toward which the (forbidden) intent would be bent. Prosecutors intend to secure convictions, intend to secure all advantages the adversary system allows. An overstep (sometimes even a correct step) may lead to howls from the defense, and next to an argument that the overstep was intended to goad the adversary into howling. Yet a search for intent that leads only to a conclusion that the prosecutor wanted to win is pointless. We must be looking for intent to do something that undercuts the interests protected by the double jeopardy clause. *Kennedy* distinguishes intent to improve the chance that the trier of fact will return a favorable decision from the forbidden intent to *avoid* decision by the trier of fact.

A defendant's interest in preserving the benefits of a trial that has been going well enables us to distinguish these two characterizations of prosecutorial intent. *Arizona v. Washington,* 434 U.S. 497, 507–08, 98 S.Ct. 824, 831, 54 L.Ed.2d 717 (1978); *Dinitz,* 424 U.S. at 611, 96 S.Ct. at 1081. Only a prosecutor who thinks the trial going sour—or who seeks to get just far enough into the trial to preview the defense—would want to precipitate a mistrial. See Peter Westen & Richard Drubel, *Toward a General Theory of Double Jeopardy,* 1978 Sup.Ct.Rev. 81, 89–97 & n. 68. Otherwise the mistrial means a waste for both sides, injuring the prosecutor along with the defense. (Trying one defendant twice means, for a prosecutor with limited resources, letting some other defendant go.) Unless there is reason to believe that the prosecutor set out to rescue a case on the path to acquittal or filch a road map of the defense, a court may cut off the inquiry; whatever may have been in the prosecutor's head was not the kind of intent with which the double jeopardy clause is concerned.

The prosecutor's case against these nine defendants was not going downhill; it was not *going,* period. It ended within minutes after the prosecutor rose to speak. The district judge remarked: "This certainly was not a situation where a case was going poorly for the government motivating it to create a mistrial situation." Defense counsel did not tip their hands; they barely had time to tip their hats. Scuttling a trial at dockside poses few if any risks to the defendant's legitimate interests. It is no surprise that the Court is willing to find early terminations supported by "manifest necessity" even though deferred action might be unjustifiable. See *Arizona v. Washington; Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). When the early termination comes at the defendant's behest, there is no constitutional obstacle to a new trial.

Defendants submit that the prosecutor misbehaved in order to obtain a post-jeopardy continuance, which could pose a problem. *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). Defendants believe that some remarks during discovery, plus the assignment of a rookie to the leadoff spot, show that the prosecution was not prepared for trial. What better device to obtain more time to get ready than to poison the opening statement? Defendants never presented this contention to the district court, which is reason enough to disregard it. Perhaps they pulled their punches, fearing that the prosecutor would respond: "Let us choose another jury at once" and puncture the contention. The senior prosecutor came close, stating: "[W]e would ask that the court dismiss this jury, declare an involuntary mistrial, and select from a new venire." No request for more time lurks in

such a statement. The district judge told everyone that a new trial would begin the next morning; the prosecutor did not object. Delay there has been, but at defendants' behest, not the prosecutor's. Deferral was occasioned by this interlocutory appeal. If the prosecutor needed more time, defendants have obliged.

AFFIRMED.