UNITED STATES of America,
Plaintiff–Appellee,

v.

Kayode A. OSENI, Salvador A. Oseni, and Abdul K. Jafaru, Defendants–Appellants.

Nos. 92–2073, 92–2088 and 92–2189.

United States Court of Appeals,
Seventh Circuit.

Argued May 13, 1993.

Decided June 17, 1993.

Barry R. Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Robert Christopher Cook (argued), Office of the U.S. Atty., Chicago, IL, for U.S.

Richard F. Walsh (argued), Chicago, IL, for Kayode A. Oseni.

Before CUMMINGS, POSNER, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

The three appellants were convicted of federal drug offenses and sentenced to long prison terms. The details of the offenses are not important, so we skip them. The only meritorious issue involves Jafaru's double jeopardy claim, so we focus on that. Jafaru's principal defense consisted of his testimony that while ostensibly cooperating with the other defendants in selling illegal drugs he repeatedly reported what was going on to the police by means of telephone calls to the police emergency number, 911. In rebuttal, the assistant U.S. attorney who was prosecuting the case, Buchman, called as a witness another assistant U.S. attorney, Cesar, who had been in charge of the pretrial investigation. Cesar testified that she had had three meetings with Jafaru and his lawyer before the trial and that at the first two meetings the 911 defense had not been mentioned. The prosecutor then asked her whether she had had another meeting with him, and she said she had, and he asked her, "At that time, did [Jafaru] mention that he had called 911?" She answered, "Yes. And that was the first time I had ever heard anything of that nature, except that immediately before that his attorney had walked into the room and told me that now he [Jafaru] had come up with a 911 ..."—at which point Jafaru's lawyer objected. The objection was sustained, but Jafaru's lawyer moved for a mistrial on the ground that the jurors had heard something that they could never erase from their minds—that Jafaru's own lawyer did not believe the 911 story. The judge, describing Cesar's testimony as nonresponsive and "so inherently prejudicial that no cautionary instruction or striking the evidence can remedy it," declared a mistrial, but only with respect to Jafaru. Over the objection of the other defendants the trial continued against them. Jafaru was retried separately.

The double jeopardy clause forbids the government to try a person twice for the same crime. If after a criminal trial begins the government decides that the case is going badly for it, it cannot dismiss the case

and reprosecute the defendant. Nor is it permitted to achieve by indirection what it is not permitted to do directly; and thus it cannot engage in trial misconduct that is intended to and does precipitate a successful motion for mistrial by the defendant. *Oregon v. Kennedy*, 456 U.S. 667, 676, 679, 102 S.Ct. 2083, 2091–92, 2091, 72 L.Ed.2d 416 (1982). The requirement of intent is critical, and easily misunderstood. The fact that the government blunders at trial and the blunder precipitates a successful motion for a mistrial does not bar a retrial. *Id.* at 674–76, 102 S.Ct. at 2088–90; *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1972); *United States v. Powell*, 982 F.2d 1422, 1429 (10th Cir.1992); *United States v. Perez Sanchez*, 806 F.2d 7 (1st Cir.1986). Yet the blunder will almost always be intentional—the product of a deliberate action, not of a mere slip of the tongue. A prosecutor who in closing argument comments improperly on the defendant's failure to have taken the stand, thus precipitating a mistrial or a reversal on appeal, is no doubt speaking deliberately, though his judgment may be fogged by the heat of combat. But unless he is trying to abort the trial, his misconduct will not bar a retrial. It doesn't even matter that he knows he is acting improperly, provided that his aim is to get a conviction. *Oregon v. Kennedy, supra*, 456 U.S. at 675–76, 102 S.Ct. at 2089–90. The only relevant intent is intent to terminate the trial, not intent to prevail at this trial by impermissible means.

 Well, but does this mean that any time a mistrial is ordered because of some answer to a question put to a witness by the prosecutor, and the defendant moves for an acquittal on the ground that retrial is barred by the double jeopardy clause, the prosecutor must be put on the stand and interrogated under oath by defense counsel concerning the prosecutor's intentions in asking the question that elicited the fatal answer? In *United States v. Jozwiak*, 954 F.2d 458 (7th Cir.1992), we held not. Analogizing the situation to the exercise of racially motivated peremptory challenges, forbidden to prosecutors by *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), we held that the judge "may evaluate the prosecutor's in-

formal explanation for an action that leads to a mistrial." 954 F.2d at 460. If the explanation is plausible, and if the trial had been going well for the prosecution when the action that precipitated the mistrial occurred, so that there would have been no reason for him to want to abort the trial, the judge can accept the prosecutor's explanation, and deny the defendant's motion for an acquittal, without holding an evidentiary hearing to explore the issue of the prosecutor's intent in greater depth and under oath.

 After the mistrial was granted, Jafaru's lawyer moved in open court for acquittal on double jeopardy grounds. In response, the prosecutor told the judge that he had not intended to abort the trial when he asked Cesar about the third meeting, and added that there was not a "shred of evidence" that Cesar had offered improper testimony in order to precipitate a mistrial. Jafaru's lawyer responded that there should be an evidentiary hearing. She pointed out that Cesar was not an ordinary witness who might blurt out inadmissible testimony in answer to a lawyer's question but the assistant U.S. attorney who had been in charge of the case during the investigative stage. She added that the evidence of Jafaru's guilt was weaker than the evidence against the other defendants, because damaging conversations of theirs had been taped but Jafaru's voice was on none of the tapes. And a self-incriminating statement that he had given and that if admitted would have nailed down his guilt had been excluded from evidence because of the way in which a government witness had answered a question, and in a retrial the statement would probably be admissible. The judge interjected that the reason she had declared a mistrial was precisely that Jafaru's credibility, fatally damaged by Cesar's testimony, was the critical factor in whether the jury would convict him, because (with his statement out) the evidence against him was not overwhelming. Yet the judge refused to grant an evidentiary hearing. She was satisfied that Buchman, the prosecutor, had been acting in good faith. She was highly critical of Cesar, an experienced prosecutor who had given damaging testimony which the judge thought not responsive to Buchman's ques-

tion after having been admonished just a few minutes earlier by the judge for volunteering statements in response to questions. The judge thought Cesar had been deliberately trying to undermine the defendant and his lawyer. Nevertheless she refused to impute Cesar's conduct to the prosecution.

In this court the government's principal argument, echoing the district judge, is that regardless of what Cesar may have intended when she volunteered the statement that precipitated the mistrial, her conduct and intentions cannot be imputed to the prosecution. When she stepped into the witness box she took off her prosecutor's hat and became an ordinary citizen. We cannot understand this argument. It is not as if Cesar were an eyewitness to a crime with which she had no professional connection. She had been in charge of the pretrial phase of the prosecution of the defendant. If she was worried that her efforts would go down the drain because the defendant would be acquitted, and hoped to redeem the situation by precipitating the mistrial, she would hardly have been acting so far outside the scope of her authority as an assistant U.S. attorney that her action would not be imputed to the government under the usual principles of respondeat superior.

 Cesar was never asked for an explanation of her testimony, let alone placed on the stand. *Jozwiak* does not rule out evidentiary hearings in every case in which government misconduct precipitates a mistrial. If the judge is not, or a reasonable judge would not be, satisfied with the prosecutor's explanation, an evidentiary hearing is in order. *United States v. Wentz,* 800 F.2d 1325, 1328 (4th Cir.1986). Here the judge did not even elicit an explanation from one of the prosecutors. And there has been no waiver of the issue. Although as we have been at pains to emphasize the prosecutors' intent that is relevant to the double jeopardy issue is not the intent to utter (or elicit) the words that precipitated the mistrial but the intent to precipitate a mistrial, and although Jafaru's lawyer was not explicit in differentiating the various intents at play, it is plain from the transcript of the hearing that all concerned understood that the issue was wheth-

er the government had tried to abort the trial. Jafaru's lawyer rightly insisted that for this purpose assistant U.S. attorney Cesar must be considered an agent of the government, and she explicitly requested an evidentiary hearing. After she made the request, Mr. Buchman asked whether Cesar "had any conscious purpose to end this trial prematurely," and answered his own question in the negative, emphasizing the strength of the government's case—and Jafaru's lawyer replied that it was not so strong, noting the failure of the government to introduce Jafaru's self-incriminating statement. We think this interchange preserved the double jeopardy issue. Jafaru's case must therefore be remanded for a further hearing before the district judge at which she should elicit an explanation from Cesar and, if any residual doubts concerning Cesar's or Buchman's intentions remain, conduct an evidentiary hearing.

Jafaru's conviction is reversed and the case is remanded to the district court for further proceedings consistent with this opinion, with of course leave to reinstate the conviction, depending on the outcome of those proceedings; for the sufficiency of the evidence to support the conviction is plain. No doubt Cesar's testimony hurt the other two defendants (the Osenis) as well as Jafaru, because they had not geared their strategy to placing the blame on him; but whether the prejudice was sufficient to compel a mistrial for them as well required a judgment call that was the district judge's to make. No other issues concerning the Osenis need be discussed; their convictions are affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.