COLORADO COURT OF APPEALS
 2016 COA 63
 
 

Court of Appeals No. 15CA0161
El Paso County District Court No. 09CR2700 
Honorable Barney Iuppa, Judge

The People of the State of Colorado,
Plaintiff-Appellant, 
v.
Daniel Christian August, 
Defendant-Appellee.
 

ORDER VACATED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE DAILEY
Graham and Ashby, JJ., concur
Announced April 21, 2016

Daniel H. May, District Attorney, Shannon Gerhart, Chief Deputy District Attorney, Doyle Baker, Senior Deputy District Attorney, Jennifer Darby, Deputy District Attorney, Judy Haller, Deputy District Attorney, Colorado Springs, Colorado, for Plaintiff-Appellant
Douglas K. Wilson, Colorado State Public Defender, Joseph Paul Hough, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellee
¶1       The People appeal the trial court’s order dismissing, on double jeopardy grounds, charges against defendant, Daniel Christian August. We vacate and remand with directions to reconsider the issue.
I. Facts
¶2       In July 2009, the People charged defendant with the
kidnapping and sexual assault of his former wife (the victim) that had allegedly occurred earlier that month. He was tried twice on those charges.
¶3       The first time, the trial court declared a mistrial and dismissed the charges, on federal double jeopardy grounds, based on a finding that the prosecution had willfully violated a court order. On appeal, a division of this court concluded that the reprosecution of defendant would be barred only if the prosecutor had acted with the intent to provoke a mistrial. See People v. August, (Colo. App. No. 11CA0365, July 3, 2013) (not published pursuant to C.A.R. 35(f)). Because the trial court had made no findings with respect to this issue, the division remanded the case with directions to do so. Id. On remand, the trial court found that the prosecutor had not intended to provoke defendant into moving for a mistrial and, consequently, denied defendant’s motion to dismiss the charges.
¶4       At defendant’s second trial, the prosecution was permitted to present CRE 404(b) evidence that defendant had sexually assaulted the victim on a previous occasion (the March 2008 assault). The trial court instructed the jury that the evidence was admitted, and thus was to be considered, only for the limited purpose of "knowledge, motive, mental state, and consent as it relates to the charges in this case."
¶5       In closing argument, the prosecutor presented a fifty-five slide PowerPoint presentation. Near the close of her argument, the prosecutor introduced slide fifty-three, which referenced the March 2008 assault, and stated that "history repeats itself." Defense counsel immediately objected to the statement. He also objected to the slide:
HISTORY REPEATS ITSELF

 March 2008 – [The victim] refused Defendant --- So he raped her
 July 2009 – [The victim] again refused defendant – So he raped her again
 Rape is about Power and Control
 Shows the Defendant’s intent – and [the victim]’s lack of consent

¶6       Defense counsel’s objection — and the basis for his subsequent request for a mistrial — was that defendant was no longer being tried on the evidence of what happened in July 2009, but rather "on the idea that history repeats itself; that this is propensity." The prosecutor responded that, read in its entirety, the slide was not an impermissible reference to propensity and that, in any event, any error could be cured by repeating the limiting instruction previously given to the jury.
¶7       Agreeing with the defense, the court declared a mistrial and heard argument as to whether the charges should be dismissed, as defendant requested, under the double jeopardy provisions of the United States and Colorado Constitutions.
¶8       On behalf of the People, a different prosecutor argued, "[We] weren’t intentionally asking for the defendant to ask for a mistrial. We wouldn’t gain anything by trying this case a third time." She pointed out that (1) the action which caused the mistrial occurred near the end of the prosecutor’s closing argument; (2) "the prosecution’s case doesn’t get any better as time goes on"; (3) "there is no evidence that the People would benefit from a mistrial," and, "although the defense had vigorously cross-examined all of the People’s witnesses, there is no indication that the trial was going to go badly for the People" and that "a mistrial was necessary to save the case for another day"; (4) the prosecution had "strenuously objected against [sic] the mistrial"; and (5) the prosecution had a strong desire to avoid a mistrial because the case had already been "extremely hard on [the] victim."
¶9       In response, defense counsel argued that the "experienced" prosecutor had "intentionally and willfully caused a mistrial" to gain several benefits  pfrom being able to try the case a third time, to wit: (1) the lead detective could be better prepared to be a more effective witness in a future trial;[1] (2) the prosecutor could correct misstatements made in opening statement; (3) prosecutorial evidence excluded from trial because it had not been timely or properly disclosed would not be excludable for those reasons in a future trial; (4) the prosecution could relitigate whether it would be allowed to play a videotape of the victim’s statements; and (5) therosecution would get "a third opportunity at seeing what [the defense’s] case is."
¶10       The trial court did not comment on whether or what the prosecution stood to gain in foregoing this trial in favor of another one, other than to (1) characterize the prosecutor’s action as trying "to win either by making improper use of the [Rule] 404(b) evidence or, if that wasn’t caught, using that [Rule] 404(b) evidence to pull a victory from the jaws of defeat"; and (2) state, "I do not agree with the People that this is a good prosecutorial case. It’s not gotten any better. It is a problematic case, at best."
¶11       The court determined that the prosecutor "has a goal of winning, of winning at any and all costs, [by] throwing fair blows as well as foul blows. To paraphrase Vince Lombardi: Winning isn’t everything. Winning is the only thing." The court also noted that, during closing argument, the prosecutor had misused the CRE 404(b) evidence a couple of times before the time that caused defense counsel to object and ask for a mistrial. The court dismissed the charges on double jeopardy grounds, concluding that the prosecuto

 "knew the limits of what was permissible, could have confined her comments to what was permissible, and intentionally failed and refused to do so"; and
 "was . . . trying to pull victory from the jaws of defeat by using inappropriate, impermissible evidence for impermissible purposes. And, failing that, she was goading the defense into asking for a mistrial, and that that was her joint specific intent for this -- for the purposes of this trial."

II. Double Jeopardy

¶12       The People contend that the trial court erred when it dismissed the charges against defendant on double jeopardy grounds. We agree.

A. General Legal Principles

¶13       "The Fifth Amendment of the United States Constitution provides that no person ‘shall . . . be subject for the same offense to be twice put in jeopardy of life or limb,’ and is made applicable to the states through the Fourteenth Amendment." People v. Berreth, 13 P.3d 1214, 1216 (Colo. 2000) (alteration in original). Similarly, the Colorado Constitution states, "nor shall any person be twice put in jeopardy for the same offense." Colo. Const. art. II, § 18.
¶14       "[O]ne of the principal rights embodied in the double jeopardy clause is the defendant’s ‘valued right to have his trial completed by a particular tribunal.’" People v. Espinoza, 666 P.2d 555, 558 (Colo. 1983) (quoting United States v. Dinitz, 424 U.S. 600, 606 (1976)). Ordinarily, a defendant’s motion for mistrial functions as a waiver of that right. Id.; People v. Baca, 193 Colo. 9, 12, 562 P.2d 411, 413 (1977). However, when the defendant’s motion for mistrial is attributable to a particular type of prosecutorial misconduct, the motion will not result in such a waiver.
¶15       Under federal double jeopardy principles, if prosecutorial misconduct is intended to provoke a mistrial, the defendant’s motion will not result in a waiver of double jeopardy protections. See Oregon v. Kennedy, 456 U.S. 667, 679 (1982); Espinoza, 666 P.2d at 558. To bar reprosecution under this standard, the record must support a finding that the prosecutorial misconduct "giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." Kennedy, 456 U.S. at 679.
¶16 Colorado’s appellate courts, however, have not determined the standard for analyzing issues of this sort under the state constitutional double jeopardy provision. And, we need not do so here. This follows because defendant makes no attempt to develop an argument as to why our state constitutional standard should be different from the federal standard, other than to rely on certain language in Espinoza; People v. Reyher, 728 P.2d 333 (Colo. App. 1986); and Baca intimating that prosecutorial "overreaching," "bad faith," or even "gross negligence," would suffice.
¶17       In none of those cases, however, did the courts attempt to distinguish the state from the federal constitutional standard. The Reyher decision borrowed the "gross negligence" language, 728 P.2d at 336, from Baca, which was a pre-Kennedy case construing the state constitutional double jeopardy protection consistent with its federal counterpart, 193 Colo. at 14 n.5, 562 P.2d at 414 n.5; and, Espinoza eschewed a state constitutional double jeopardy analysis, while noting that Kennedy required more than simply a showing of "bad faith" or "overreaching," 666 P.2d at 559. Any lingering issue about the ongoing meaning of those cases has been resolved by Harris v. People, 888 P.2d 259 (Colo. 1995), where the supreme court said, "Colorado has adopted a subjective test . . . under which a retrial is barred only if prosecutorial or judicial misconduct giving rise to the mistrial was intended to provoke the defendant into moving for a mistrial." Id. at 266 n.4; see People v. Stevenson, 228 P.3d 161, 169 (Colo. App. 2009) (relying on Kennedy).
¶18       Therefore, we apply the Kennedy standard in addressing the double jeopardy issues here: double jeopardy bars a second trial "[o]nly where the governmental conduct in question is intended to ‘goad’ the defendant into moving for a mistrial." Kennedy, 456 U.S. at 676.

B. Defendant’s Heavy Burden . . .

¶19       A defendant has the burden of establishing that the prosecutor acted with the intent to provoke the defense into obtaining a mistrial. See, e.g., United States v. Borromeo, 954 F.2d 245, 247 (4th Cir. 1992); State v. Muhannad, 837 N.W.2d 792, 801 (Neb. 2013); Robinson v. Commonwealth, 439 S.E.2d 622, 624 (Va. Ct. App. 1994).
¶20       The "intent to provoke a mistrial" standard is "an extremely exacting standard," Earnest v. Dorsey, 87 F.3d 1123, 1130 (10th Cir. 1996), which is met only in "rare circumstance[s]," People v. Bennett, 994 N.E.2d 584, 587 (Ill. App. Ct. 2013); see Kennedy, 456 U.S. at 688 ("It is almost inconceivable that a defendant could prove that the prosecutor’s deliberate misconduct was motivated by an intent to provoke a mistrial instead of an intent simply to prejudice the defendant.") (Stevens, J., concurring in the judgment) (footnote omitted); United States v. Lopez-Avila, 678 F.3d 955, 962 (9th Cir. 2012) (noting that the Kennedy standard is "rarely met"); Martinez v. Caldwell, 644 F.3d 238, 243 (5th Cir. 2011) ("[T]his standard is exacting."); State v. Kelly, 34 N.E.3d 513, 517 (Ohio Ct. App. 2015) ("Generally, the narrow exception adopted by the United States Supreme Court in Kennedy is reserved for the limited set of circumstances where the nature of the state’s misconduct clearly and unquestionably demonstrates its intent to cause or invite a mistrial.").

C. . . . To Show a Particular Type of Intent

¶21       The type of prosecutorial intent triggering double jeopardy protections is peculiar in nature:
Because intent is a matter of characterization, you cannot even know what indicia to look for unless you know the direction toward which the (forbidden) intent would be bent. Prosecutors intend to secure convictions, intend to secure all advantages the adversary system allows. An overstep (sometimes even a correct step) may lead to howls from the defense, and next to an argument that the overstep was intended to goad the adversary into howling. Yet a search for intent that leads only to a conclusion that the prosecutor wanted to win is pointless. We must be looking for intent to do something that undercuts the interests protected by the double jeopardy clause. Kennedy distinguishes intent to improve the chance that the trier of fact will return a favorable decision from the forbidden intent to avoid decision by the trier of fact.
United States v. Jozwiak, 954 F.2d 458, 460 (7th Cir. 1992).
¶22       Similarly, the Seventh Circuit Court of Appeals has written:
The fact that the government blunders at trial and the blunder precipitates a successful motion for a mistrial does not bar a retrial. Yet the blunder will almost always be intentional — the product of a deliberate action, not of a mere slip of the tongue. . . . But unless [the prosecutor] is trying to abort the trial, his misconduct will not bar a retrial. It doesn’t even matter that he knows he is acting improperly, provided that his aim is to get a conviction. The only relevant intent is intent to terminate the trial, not intent to prevail at this trial by impermissible means.
United States v. Oseni, 996 F.2d 186, 188 (7th Cir. 1993) (citations omitted); see also, e.g., Fields v. State, 626 A.2d 1037, 1049 (Md. Ct. Spec. App. 1993) ("Even . . . where the prosecutor hascommitted the deliberate foul, there is still this pivotal distinction between (1) seeking to win the game unfairly and (2), knowing the game is going awry, deliberately causing it to be cancelled and rescheduled. If the prosecutor wins the game unfairly, we make him replay it. When the prosecutor deliberately causes the game to be cancelled unfairly, we do not permit him to reschedule it.").

D. Standard of Review

¶23       The trial court’s finding concerning the prosecution’s motivation and intent is a finding of fact, Kennedy, 456 U.S. at 675, which we defer to so long as it is not tainted by legal error or otherwise clearly erroneous. See People in Interest of J.R.T., 55 P.3d 217, 219 (Colo. App. 2002), aff’d, 70 P.3d 474 (Colo. 2003). We review de novo whether the trial court correctly applied the appropriate legal standard in making its findings of fact. Id.

E. The Trial Court Applied an Incorrect Legal Standard

¶24       As recounted above, the trial court determined that the prosecutor "was either trying to pull victory from the jaws of defeat by using inappropriate, impermissible evidence for impermissible purposes. And, failing that, she was goading the defense into asking for a mistrial, and that that was her joint specific intent . . . for the purposes of this trial."
¶25       We acknowledge that there is authority supporting the court’s determination that this type of dual intent would satisfy the Kennedy standard. See Fields, 626 A.2d at 1048 (One "special intent" barring retrial under Kennedy is "knowing it to be error, but desiring to ‘sabotage’ a probable loser either 1) by snatching an unexpected victory from probable defeat if not caught, or 2) by getting caught, thereby provoking the mistrial, averting the probable acquittal and living to fight again another day. (A calculated sabotaging of a perceived ‘lost cause’ in either event; an indifference to whether he is caught or not)." (quoting West v. State, 451 A.2d 1228, 1235 (Md. Ct. Spec. App. 1982))).
 
¶26       However, in United States v. Gonzalez, 248 F.3d 1201 (10th Cir. 2001), the Tenth Circuit Court of Appeals implicitly rejected such a position. In that case, the trial court had dismissed charges, after granting a mistrial, based on the prosecution’s persistence in introducing to the jury highly prejudicial evidence. Id. at 1204. From the evidence of prosecutorial overreaching, the trial court had inferred that the People had intended to goad the defendant into requesting a mistrial and had based its finding on the principle that a person intends the natural and probable consequences of his or her acts if those acts are knowingly done. Id.
 
¶27       The Tenth Circuit criticized the trial court’s analysis "because, while one natural and probable consequence of prosecutorial efforts to introduce favorable, albeit prejudicial, evidence might be a mistrial, another natural and probable consequence of such efforts might be conviction." Id. Relying on Jozwiak, the Tenth Circuit found that the trial court should have focused, instead, on looking for prosecutorial intent "to avoid decision by the trier of fact." Id. (quoting Jozwiak, 954 F.2d at 460).
 
¶28       For the reasoning expressed not only in Gonzalez, but also in the other authorities cited above, we conclude that double jeopardy does not bar retrial of a defendant based on a mistrial brought about by a prosecutor’s intent to obtain a conviction, by hook or crook, by means fair or foul. Double jeopardy bars retrial in the mistrial context only where the prosecution’s intent is to avoid a jury verdict.
 
 
¶29       In our view, the trial court erred in dismissing charges based on a finding, in essence, that the prosecutor acted with indifference as to the means by which she could achieve, or better advance, the prospects of victory. Double jeopardy dismissals in this context are reserved solely for those circumstances in which the prosecutor acted with the intent to provoke a mistrial. Cf. Espinoza, 666 P.2d at 559 (recognizing that "prosecutorial misconduct did not provide a basis for a claim of double jeopardy in the absence of evidence that the prosecutor was attempting to save his case for another day by triggering a mistrial").[2]
¶30       But does the court’s error require a remand? Could we not assume that the court’s determination regarding the prosecutor’s "second type" of intent sufficed to invoke the Kennedy standard and simply decide whether that determination has or lacks support in the record? It is not, in our view, that simple. In the first instance, the court’s determination could have been influenced by its impermissibly broad view as to what would satisfy the Kennedy standard. See J.R.T., 55 P.3d at 220; see also Sheridan Redevelopment Agency v. Knightsbridge Land Co., 166 P.3d 259, 265 (Colo. App. 2007) (noting the general rule that "[a] trial court ruling made with an incorrect legal standard must be reversed and the case remanded to afford the court an opportunity to apply the correct standard to the facts as it finds them"). In the second instance, the court’s findings were sparse — so sparse that we cannot say with any degree of confidence that the court was aware of the pertinent circumstances that should have been taken into account before barring retrial.

F. The Court’s Evaluation of the Issue

¶31       In evaluating whether a prosecution-induced mistrial would bar a retrial, we must understand why a prosecutor would intentionally provoke a mistrial:
Only a prosecutor who thinks the trial [is] going sour — or who seeks to get just far enough into the trial to preview the defense — would want to precipitate a mistrial. Otherwise the mistrial means a waste for both sides, injuring the prosecutor along with the defense. . . . Unless there is reason to believe that the prosecutor set out to rescue a case on the path to acquittal or filch a road map of the defense, a court may cut off the inquiry; whatever may have been in the prosecutor’s head was not the kind of intent with which the double jeopardy clause is concerned.
Jozwiak, 954 F.2d at 460 (citation omitted); see also Kennedy, 456 U.S. at 686 n.19 (Stevens, J., concurring in the judgment) (noting that the prosecutor might intend to provoke a mistrial "in order to shop for a more favorable trier of fact, or to correct deficiencies in [his] case, or to obtain an unwarranted preview of the defendant’s evidence" (quoting Peter Westen & Richard Drubel, Toward a General Theory of Double Jeopardy, 1978 Sup. Ct. Rev. 81, 94 (1978))) (alteration in original).[3]
 
¶32       "Because ‘subjective’ intent often may be unknowable, . . . a court — in considering a double jeopardy motion — should rely primarily upon the objective facts and circumstances of the particular case." Kennedy, 456 U.S. at 679-80 (Powell, J., concurring); see id. at 675 ("[A] standard that examines the intent of the prosecutor, though certainly not entirely free from practical difficulties, is a manageable standard to apply. It merely calls for the court to make a finding of fact. Inferring the existence or nonexistence of intent from objective facts and circumstances is a familiar process in our criminal justice system."); see also, e.g., Phillips v. Court of Common Pleas, 668 F.3d 804, 811 (6th Cir. 2012) ("Intent generally is inferred from objective facts and circumstances."); Gonzalez, 248 F.3d at 1204 ("To the extent it allowed an inference of prosecutorial intent to force a mistrial in the absence of objective evidence, the analysis was contrary to Kennedy and our precedent . . . ."); State v. Oliver, 372 S.E.2d 256, 261 (Ga. Ct. App. 1988) ("The intent of the prosecutor in asking an improper question of a witness is to be inferred from the objective facts and circumstances of the case."); Muhannad, 837 N.W.2d at 802 ("A trial court makes its finding of subjective intent by ‘[i]nferring the existence or nonexistence of intent from objective facts and circumstances. . . ." (quoting Kennedy, 456 U.S. at 675)) (alteration in original).
¶33       In Baca, the supreme court recognized that "the nature and gravity of the error may be relevant to the motivation of the party committing the error." 193 Colo. at 14, 562 P.2d at 414-15. "The more egregious the prosecutorial error, and the harsher its impact on the defendant, the more readily the inference [of improper intent] could be drawn." Kennedy, 456 U.S. at 690 n.29 (Stevens, J., concurring in the judgment); see Oliver, 372 S.E.2d at 261 ("The rationale or justification given by the state for the objectionable testimony is relevant to a determination of whether prosecutorial conduct was deliberately intended to cause a mistrial.").
¶34       "[E]vidence of prior acts is not admissible if its only relevance is to prove the propensity of an accused to commit crimes." People v. Rivera, 56 P.3d 1155, 1166 (Colo. App. 2002). Here, the trial court found that the prosecutor "knew the limits of what was permissible, could have confined her comments to what was permissible, and intentionally failed and refused to do so."4 Such a finding is not however, in and of itself, a sufficient ground upon which to base a finding of an intent to provoke a mistrial. See, e.g., Oseni, 996 F.2d at 188 ("It doesn’t even matter that [the prosecutor] knows he is acting improperly, provided that his aim is to get a conviction. The only relevant intent is intent to terminate the trial, not intent to prevail at this trial by impermissible means.") (citation omitted); People v. Ramirez, 500 N.E.2d 14, 17 (Ill. 1986) ("[T]hat a prosecutor may have purposely offered evidence constituting error should neither be equated with actually showing an intent to provoke a mistrial nor be the ground for a reasonable inference of an intent to provoke a mistrial."). This is particularly true given the context in which the prosecutor’s remark was about to be made, i.e., in juxtaposition with the permissible uses of the evidence, which appeared on the PowerPoint slide along with the improper comment.
¶35       There must, instead, be a finding of an intent to act improperly with the goal of obtaining a mistrial as a result of that improper act. In determining whether the prosecutor acted with this specific type of intent, a court may consider whether there was a sequence of overreaching or error before the error resulting in the mistrial; the timing of the error; whether the prosecutor resisted the motion for a mistrial; whether the prosecutor proffered some plausible justification for his or her actions; whether the prosecutor testified, and the court below found, that there was no intent to cause a mistrial; whether the record contains any indication that the prosecutor believed the defendant would be acquitted; and, whether another trial would be desirable for the government. Muhannad, 837 N.W.2d at 802.
¶36       The trial court made "findings" on only two of these circumstances, i.e., those concerning a prior sequence of misconduct by the prosecutor and the relative strength of the prosecution’s case. With respect to the first of those two matters, the court found that, prior to the error that led to the mistrial, the prosecutor had twice made comments inviting the jury to make impermissible "propensity" use of the March 2008 assault evidence. But the defense had not objected on either of those occasions, and the court had not warned the prosecutor that continued misconduct could lead to a mistrial. See 6 Wayne R. LaFave et al., Criminal Procedure § 25.2(b), at 795 (4th ed. 2015) (listing, among the factors that may be considered, whether the trial court had warned the prosecutor that continued misconduct could lead to a mistrial).
¶37       The court also concluded that the prosecutor had intended to "pull victory from the jaws of defeat" and that the prosecution did not have a "good" case: "It’s not gotten any better. It is a problematic case, at best." These comments can be read as intimating the court’s view that the prosecution had a "loser" of a case. But the court never made any findings to support (or explain how it reached) that conclusion. And, there is no evidence or indication in the record that the prosecution thought defendant would be acquitted.
¶38       Defendant asserted in the trial court that the prosecution’s case would improve with time because the lead detective would be better prepared to testify, because the prosecution could correct the multiple misstated facts from its opening statement, and because certain evidence which had been excluded because of belated disclosure would be available to the prosecution in a future trial.5 The court did not make any findings with respect to these matters.
¶39       rosecution made misstatements were inconsequential to the outcome of the case.6 With respect to the other matter, however, the record reflects that the trial court had excluded, on grounds of belated disclosure, prosecutorial-proffered evidence of: (1) "a jailhouse informant and his conversations with [defendant]"; (2) "a strangulation diagram"; and (3) an "expert witness in strangulation." The precise nature of the belatedly disclosed information is not, though, evident to us from the record. It could have strengthened the prosecution’s case on retrial. If so, this would be a circumstance that would support a finding of an intent to provoke a mistrial to save a losing case for another day.
¶40       But alongside this circumstance the court would also have to consider others that may have been indicative of an intent to avoid a mistrial, to wit:

 The prosecutor strenuously objected to the mistrial and proffered plausible justifications for both her actions and why a mistrial should be denied. She asserted that the "history repeats itself" remark should not be viewed in isolation, but rather in connection with the permissible purposes of the evidence, which were portrayed on the slide. Further, she argued that a mistrial was not required because "[w]e had a limiting instruction any time we talked about [the March 2008 assault] in trial. We had a limiting instruction that’s already been read to the jury. Your Honor can read the limiting instruction again. There is a way to cure this." Cf. People v. Williams, 2012 COA 165, ¶22 (noting that receipt of impermissible Rule 404(b) evidence does not necessitate a mistrial per se); People v. Carrier, 791 P.2d 1204, 1205 (Colo. App. 1990) ("A curative instruction is generally sufficient to overcome an error, and an instruction is inadequate only when a comment is so prejudicial that, but for the comment, the jury might not have found the defendant guilty.");
 The prosecutor made the improper comment at issue here in the final stage of a four-day trial, near the very end of her closing argument. See Mathis v. State, 623 S.E.2d 674, 676 n.3 (Ga. Ct. App. 2005) ("We note that the [prosecutor’s] improper comment did not occur until the State’s closing argument following three days of trial. Therefore, conceptually, ‘the prosecution had already built its case against [the defendant] and had no reason to abort the first trial by forcing a mistrial.’" (quoting State v. Oliver, 372 S.E.2d 256, 261 (Ga. Ct. App. 1988));7 and
 The severe emotional toll the case had already taken (and could be expected to take in a third trial) on the victim gave the prosecution incentive to avoid a mistrial.

At the end of the day, we are mindful that it is for the trial court, and not this court, to determine the prosecutor’s intent in making the "history repeats itself" comment. Only when the court uses proper legal standards and makes adequate findings of fact based on the totality of relevant circumstances, however, can we be assured that the parties have been afforded their due under the law. Because the record discloses that the trial court used an improper legal standard and may not have considered the totality of relevant circumstances, we vacate the order of dismissal and remand the matter to the trial court for reconsideration.

III. Conclusion

¶41       The order is vacated, and the case is remanded to the trial court for reconsideration of its ruling and further findings of fact consistent with the views expressed in this opinion.
JUDGE GRAHAM and JUDGE ASHBY concur.

[1] Counsel claimed that the detective’s unawareness of certain details displayed a "level of incompetence" on her part.
[2] We do not, and need not, determine whether there may be circumstances where retrial would be prohibited because the prosecution is found to have the specific intent to goad a defendant into requesting a mistrial in combination with other motivations. We determine here that the equal and alternative intent found by the trial court is inconsistent with the Kennedy standard.
[3] Hoping to save for another day a case gone sour is the reason most typically identified for a prosecutor to intentionally trigger a mistrial. See, e.g., United States v. Lopez-Avila, 678 F.3d 955, 962 (9th Cir. 2012) (acknowledging prosecutors may intend to provoke a mistrial to salvage a "sink[ing] . . . case"); United States v. Cornelius, 623 F.3d 486, 487 (7th Cir. 2010) (noting prosecutors may intend to provoke a mistrial to "rescue a case . . . going badly"); United States v. Gilmore, 454 F.3d 725, 729 (7th Cir. 2006) ("The key question is whether the prosecutor deliberately introduced the error in order to provoke the defendant into moving for a mistrial, and thereby rescuing a trial going badly."); Fields v. State, 626 A.2d 1037, 1048 (Md. Ct. Spec. App. 1993) (recognizing prosecutors may intend to provoke a mistrial to "avert the probable acquittal" (quoting West v. State, 451 A.2d 1228, 1235 (Md. Ct. Spec. App. 1982))); State v. Kelly, 34 N.E.3d 513, 517 (Ohio Ct. App. 2015) (discussing that prosecutors may intend to provoke a mistrial to save a case "going south").
[4] As the court recognized, the prosecutor’s oral and written "history repeats itself" remarks invited the jury to use the evidence of the March 2008 assault for impermissible "propensity" ("he did it once, he’d do it again") purposes. See 2 Edward J. Imwinkelried, Uncharged Misconduct Evidence § 9:80 (rev. ed. 2013) (noting that the prosecutor invites the jury to misuse other bad act evidence if "the prosecutor’s language suggest[s] that the prosecutor was really using an ‘it happened once, it could happen again’ theory of logical relevance"); see also, e.g., Brown v. State, 817 A.2d 241, 256 (Md. 2003) (describing "propensity evidence" as that which suggests "if he engaged in that conduct once, he likely did it again").
[5] Defendant had also advanced two other grounds in support of the requisite intent: A mistrial would have given the prosecution (1) the opportunity to relitigate the issue of whether it would be allowed to play a videotape of the victim’s statements and (2) a chance to alter its tactics with a better view of the defense case in mind. These concerns, however, are highly speculative in nature, given (1) the application and operation of the "law of the case" doctrine, see People v. Roybal, 672 P.2d 1003, 1005 n.5 (Colo. 1983); and (2) the prosecution had already seen most of the defense case in the first trial.
[6] The detective did not specify that phone records showing calls from the victim to defendant on the night of the charged offenses were made in Pacific standard time. Additionally, the prosecutor misstated that the victim was unemployed and still dating her boyfriend at the time of the offenses (though the victim, apparently, was actually employed and had separated from her boyfriend days prior). None of these details, however, makes it any more or less likely that defendant kidnapped and assaulted the victim on the night in question.
[2] With respect to the "timing" factor, the issue is ordinarily "whether the timing of the [prosecutor’s misconduct] was such that the success or failure of the prosecution could reasonably have been assessed." State v. Thomas, 562 S.E.2d 501, 504 (Ga. 2002); see State v. Torres, 744 A.2d 699, 705 (N.J. Super. App. Div. 2000) (finding no intent to provoke a mistrial where "the error was made in the assistant prosecutor’s opening statement before any evidence had been offered or admitted, prior to the point in which success or failure in the prosecution of the defendant could reasonably have been assessed"). The present case had reached the stage at which the prosecution’s prospects could reasonably be assessed. That said, however, the prosecutor had had ample opportunity before the 53rd slide in a 55-slide presentation to "torpedo" the trial if that had been her intent.