# United States Court of Appeals
## For the First Circuit

No. 20-1073

UNITED STATES,

Appellee,

v.

RAYMOND ALEXANDER GARRAWAY,

Defendant, Appellant.

---

No. 20-1074

UNITED STATES,

Appellee,

v.

CORDWELL NATHANIEL BENNETT,

Defendant, Appellant.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

---

Before

Lynch, Lipez, and Barron,
Circuit Judges.

---

José B. Vélez Goveo for appellants.
José B. Vélez Goveo, with whom Vélez & Vélez Law Office were
on brief, for appellant Raymond Alexander Garraway.

Jorge E. Rivera-Ortíz on brief for appellant Cordwell Nathaniel Bennett.

Javier Alberto Sinha, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, and Francisco A. Besosa-Martinez, Assistant United States Attorney, were on brief, for appellee.

November 15, 2021

**LYNCH**, **Circuit Judge**.  Raymond Alexander Garraway and Cordwell Nathaniel Bennett, convicted at trial for possession with intent to distribute marijuana, successfully moved for a mistrial on the basis of improper arguments made by the prosecution at closing.  The government now seeks to retry them, and Garraway and Bennett moved to dismiss, arguing that retrial would violate the Double Jeopardy Clause.  The district court denied the motion to dismiss.  United States v. Trapp, No. 16-159, 2019 WL 6974767, at *1 (D.P.R. Dec. 18, 2019).  Because the district court did not abuse its discretion in finding that the prosecution did not intentionally provoke a mistrial, we affirm.

**I.**

On March 1, 2016, a U.S. Coast Guard law enforcement detachment aboard a Dutch naval ship came across an eighty-foot fishing vessel while on routine patrol in the Caribbean.  The Coast Guard team captured video of the crew of the fishing vessel jettisoning objects overboard.

The Coast Guard deployed two rigid-hulled inflatable boats, one to intercept the fishing vessel and one towards the debris.  The boat dispatched in the direction of the jettisoned debris recovered nineteen bales of suspected narcotics.  Samples from the bales were tested and found to be marijuana. In total, the marijuana bales weighed 399.4 kilograms.

The second team questioned the individuals aboard the fishing vessel. The Coast Guard team took samples from the fishing vessel which were tested using an Ion Scan 400B device, which detects the presence of narcotics. No narcotics were detected. The Coast Guard team found no contraband aboard the fishing vessel. Two of the bales that had been recovered preliminarily tested positive for marijuana, and the Coast Guard took the crew into custody. On March 16, 2016, Garraway and Bennett, along with the third man aboard the fishing vessel, Michael Anthony Trapp, were indicted on two counts of possession with intent to distribute 100 kilograms or more of marijuana.

Their jury trial began on September 4, 2018. The prosecution introduced into evidence the video taken by the Coast Guard of objects being thrown out of the fishing vessel, testimony of a Coast Guard officer that the marijuana bales were recovered near the fishing vessel and that there were no other vessels in the area, and testimony that rope was found on the fishing vessel which appeared identical to the rope used to bind the bales of marijuana. The defense theory was that the bales of marijuana recovered by the Coast Guard had never been aboard their fishing vessel. The defendants pointed to the Ion Scan results which showed that marijuana was not detected aboard the fishing vessel, as well as the fact that the bales of marijuana were found between five and seven nautical miles from the fishing vessel. They also

introduced testimony that the seas had been rough, and that they were throwing garbage and debris, not bales of marijuana, off the fishing vessel because it endangered them to have loose debris rolling around the deck.

The prosecution and defense entered into several factual stipulations concerning the chain of custody of the bales of marijuana and the details of the Ion Scan testing and results. The defense relied on these stipulations to establish the negative Ion Scan results and where the bales of marijuana were found. The stipulations contained no information about whether or how wrapping the drugs would affect the accuracy of the Ion Scan results, and no evidence to that effect was presented. During the closing argument rebuttal, the prosecution argued to the jury that the wrappings on the bales of marijuana prevented the Ion Scan from detecting its presence on the fishing vessel. The jury convicted.

The defendants moved for an acquittal and for a mistrial. The district court denied the motion for acquittal. However, it granted the motion for mistrial on the basis of the prosecution's statements about the Ion Scan results being affected by the wrapping on the marijuana. The district court found the statements were not a permissible inference to argue from the evidence introduced at trial. It found that the prosecution made the statement deliberately, though not in bad faith, and that the court

could not be confident, given the totality of the circumstances, that the prosecution's argument did not affect the jury's decision to convict. The court did note in a footnote that there was no double jeopardy bar to retrial, finding that "there is no indication that in making the statement in question, the prosecutor had the intent to goad defendants into moving for a mistrial or to harass them out of fear of acquittal due to insufficient evidence in order to marshal a more favorable opportunity to convict the defendants in a subsequent trial."

Nevertheless, when the prosecution began to retry the defendants, the defendants filed a joint motion to dismiss for violation of the Double Jeopardy Clause. They argued that the prosecution deliberately made the improper statement at closing in order to goad the defendants into moving for a mistrial, so that the prosecution would have a better chance at convicting in a subsequent trial.

The district court denied the motion, finding that the prosecution did not intend to provoke a mistrial. In making its decision, the district court also concluded that "this is not a case where the evidence led a reasonable person to conclude that acquittal was likely at the time of the objected comment, and that misconduct had to be engaged in to prevent it."

## II.

The standard of review applicable to a motion to dismiss on double jeopardy grounds following a mistrial is abuse of discretion. United States v. Toribio-Lugo, 376 F.3d 33, 38 (1st Cir. 2004). The district court's findings of fact are reviewed for clear error, while conclusions of law are reviewed de novo.[1] Id.

The Double Jeopardy Clause, U.S. Const. amend. V, cl. 2, "protects not only against double punishment but also against being 'twice put to trial for the same offense.'" United States v. Suazo, 14 F.4th 70, 74 (1st Cir. 2021) (quoting Abney v. United States, 431 U.S. 651, 661 (1977)). Not all reprosecution is barred, and mistrials are a common exception. See Toribio-Lugo, 376 F.3d at 38. Retrial is, however, barred after a mistrial where "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." Oregon v. Kennedy, 456 U.S. 667, 679 (1982); see also United States v. Gary, 74 F.3d 304, 315 (1st Cir. 1996), abrogated on other grounds by Johnson v. United States, 576 U.S. 591 (2015).

Garraway and Bennett argue that the district court erred in finding that the prosecution did not intend to provoke them to

---

[1] Because the defendants were tried together, raise the same issues, and make the same arguments in their briefs, we address their arguments together. The third co-defendant, Michael Anthony Trapp, is not involved in this appeal.

move for a mistrial by making improper arguments at closing. They contend that this intent can be inferred from what they characterize as a pattern of overreaching with respect to the stipulations by the government and a weak response to the defendants' motion for mistrial, the timing of the improper statement at a point when the defendants could no longer rebut it, and what they consider the overall weakness of the government's case. They also point out that the government now seeks to introduce new expert testimony while also compelling the defendants to enter into the same stipulations as in the first trial, which they argue is evidence that the prosecution intentionally threw the first case in order to make a stronger case on retrial.

The defendants do not challenge the legal standard the district court used to decide their motion; rather, they challenge only the district court's finding that the prosecution did not intend to provoke a mistrial. This finding is not clearly erroneous.

The district court determined that, at the time of closing argument, an acquittal was not likely. Though defendants characterize the prosecution's case as "weak," the trial court's determination is supported by the record. The prosecution introduced video of the defendants throwing debris out of the fishing vessel. The prosecution showed that the Coast Guard had

recovered nineteen bales of marijuana from the water, and that there were no other vessels in the vicinity. Perhaps most damning, the prosecution introduced testimony that the rope used to bind the bales was the same as rope found on the fishing vessel. The defendants introduced evidence to try to neutralize the prosecution's case, including offering an alternative explanation for why the crew was jettisoning debris from the fishing vessel and emphasizing the Ion Scan's negative findings. However, given the substantial case mounted by the prosecution, the record supports the district court's assessment of the likelihood of acquittal.

In light of the district court's supportable finding that acquittal was not likely, the defendants' arguments about the timing of the statement also fail. Nothing about the timing of the improper argument suggests that the district court's finding was clearly erroneous and nothing in Kennedy supports a rule that improper arguments made late in the trial are necessarily intended to provoke a mistrial. See United States v. Jozwiak, 954 F.2d 458, 460 (7th Cir. 1992) ("Only a prosecutor who thinks the trial going sour -- or who seeks to get just far enough into the trial to preview the defense -- would want to precipitate a mistrial.").

The defendants' argument that the government has benefitted from previewing their arguments at trial and strengthening its own case on retrial ignores that the defendants

benefit similarly from the declaration of a mistrial. See United States v. Garske, 939 F.3d 321, 335 (1st Cir. 2019) (noting that "the purported advantage works both ways . . . . [as] the defendants have previewed the government's case and are now better positioned to defend against it"). The government, which bears the burden of proof, faces the risk at retrial that witnesses' memories may dull or witnesses may become unavailable, in addition to the need to expend limited resources to retry an entire case. See United States v. Lun, 944 F.2d 642, 646 (9th Cir. 1991) ("'If the defendant consents to a mistrial, the prosecutor must go to the time, trouble, and expense of starting all over with the criminal prosecution.' Witnesses may disappear or forget their testimony after the long delay." (citation omitted) (quoting Kennedy, 456 U.S. at 686 (Stevens, J., concurring))); see also Jozwiak, 954 F.2d at 460 ("Trying one defendant twice means, for a prosecutor with limited resources, letting some other defendant go.").

The defendants also argue the prosecution "barely objected" to their motion for a mistrial. Again, this is not so. The trial court found that the government had made a "comprehensive response." This too is supported by our review of the government's response to the defendants' motion for mistrial and is not clearly erroneous. Though the district court ultimately disagreed, the government defended its statements at closing as reasonable

- 10 -

inferences from the evidence it presented at trial and did not make merely a pro forma response to the defendants' motion. After overseeing the entire trial and considering the defendants' motion for a mistrial and the prosecution's opposition, the district court specifically found that the prosecutor believed he was arguing a permissible inference from the evidence.

In all, the record supports the government's contention, and the district court's finding, that the government did not intentionally provoke a mistrial. The government presented a strong case at trial. At the point before the prosecution made its closing rebuttal argument, an acquittal was not likely. The prosecution vigorously opposed the defendants' motion for a mistrial. Any opportunity the prosecution will have to adjust its case in response to what occurred at the first trial will also be afforded to the defendants.

As the district court pointed out in denying the defendants' double jeopardy motion, it "presided over the trial," affording it a better vantage point than ours to assess the intent of the prosecution. Absent clear evidence from the record that the district court's finding as to the intent to provoke a mistrial is unsupported, we will not supplant its judgment with our own. No such evidence exists here; rather, the record amply supports the district court's decision.

**III.**

The order of the district court is <u>affirmed</u>.